IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
JOSEPH DIMARCO,                      )
                                     )
            Plaintiff,               )
                                     )         No. 07-2561 Mc/An
v.                                   )
                                     )
MICHAEL J. ASTREW,                   )
COMMISSIONER OF                      )
SOCIAL SECURITY,                     )
                                     )
            Defendant.               )
```

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Joseph DiMarco's ("Plaintiff") appeal of the denial of a period of disability and disability insurance benefits under Title II of the Social Security Act by Defendant, Michael Astrew, Commissioner of Social Security ("Defendant"). United States District Judge Jon P. McCalla referred this appeal to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). For the reasons set forth below, the Court recommends that the decision of the Commissioner be **REVERSED**.

**PROCEDURAL HISTORY**

Plaintiff Joseph DiMarco first applied for Social Security Disability benefits pursuant to Title II of the Social Security Act on December 5, 1996. Plaintiff's applications were denied both initially and upon reconsideration, whereupon Plaintiff timely filed a request for a hearing. United States Administrative Law Judge ("ALJ") Anthony Fava conducted a hearing on January 5, 1999, and then issued an unfavorable decision on February 22, 1999. Plaintiff appealed the

1

decision of ALJ Fava to the Appeals Council of the Social Security Administration. On December 22, 2000, the Appeals Council vacated the February 22, 1999, decision and remanded the case for a new hearing. Following a second hearing on March 11, 2002, ALJ Fava issued another unfavorable decision dated September 11, 2002. Plaintiff again appealed the decision to the Appeals Council on October 3, 2002, but the Appeals Council denied Plaintiff's request for review, leaving ALJ Fava's decision as the final decision of the Commissioner of Social Security. Plaintiff then appealed the September 11, 2002, decision to the District Court. In December 2004, the District Court remanded this case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) because the tape of the March 11, 2002, hearing had been lost before it could be transcribed.

In April 2004, Plaintiff filed two new applications for benefits, which were denied both initially and upon reconsideration. Plaintiff then requested a hearing on these 2004 applications. Because Plaintiff's 1996 applications were still pending, both the 1996 and the 2004 applications were considered during a third hearing held on August 1, 2006, this time before ALJ Dennis Reap.[1] On January 31, 2007, ALJ Reap issued a single, unfavorable decision on the 1996 and 2004 applications which is the final decision of the Commissioner and subject to judicial review.

## FACTUAL BACKGROUND

Plaintiff was born on July 11, 1950, and was fifty-six (56) years old at the time of the most recent hearing before the ALJ. Plaintiff has four years of college education, and his past relevant work has been as a plumber's apprentice and an employment agency manager. Plaintiff alleges that he became disabled in November 1996 due to a back injury, depression, and vision

---

[1] ALJ Reap will be referred to as "the ALJ" throughout this report and recommendation.

problems. At the first hearing before an ALJ, Plaintiff testified that he sees or talks to Dr. David Favara, his treating psychologist, three to five times per week. Dr. Favara, who has treated Plaintiff since 1996 testified that Plaintiff had severe problems with depression, an obsessive-compulsive disorder, post-traumatic stress disorder, and could not handle the stresses of dealing with the public. Dr. Favara also testified that Plaintiff's condition would get better and then worse. Additionally, Plaintiff stated that he gets angry easily, cannot concentrate, and must write notes to remind himself to do things.

Plaintiff also testified as to his physical problems. Plaintiff complained that he has knee pain due to arthritis and that the vision in his left eye is correctable to only 20/200. He also stated that he began having fatigue, hand swelling, nausea, vomiting, and diarrhea in 1996. Plaintiff claimed that he was diagnosed with lupus, but takes no medication for it, and that he has continual back pain for which he takes aspirin as needed. Additionally, Plaintiff testified that he has Raynaud's syndrome and that his hands swell and have no grip which causes him to drop things. He testified that he has leg cramps caused by cardiovascular disease and that both of his legs go to sleep up to the mid-calf area. Plaintiff stated that every night his right arm tingles between his elbow and his shoulder.

## **THE HEARING**

At the hearing before ALJ Reap, Plaintiff testified regarding his work history, his medical problems, and his daily living activities. He testified that he has had back trouble since 1989 when he was rear-ended in a car accident and that he had surgery on his back later that year. TR. 517–18. Plaintiff further stated that beginning in 1996 he had difficulty with walking and balance after he fell from a ladder, and that this was the onset of his disability. TR. 519. He

stated that his right foot and toes would often go to sleep, and he would have numbness and tingling up his leg that sometimes causes him to fall down. TR. 522. Plaintiff described his vision problems, noting his vision is poor, that he now wears bifocals, and that his depth perception is impaired. TR. 524–25. He explained that these vision problems caused him difficulty in performing his job as a plumber. TR. 525–26. Additionally, Plaintiff noted his problems with concentration, making simple judgments, post-traumatic stress, responding appropriately to work pressures, and depression. TR. 540–43, 553.

## **THE ALJ'S DECISION**

Using the five-step disability analysis,[2] the ALJ found, at the first step and second step, that Plaintiff had not engaged in any substantial gainful employment since November 8, 1996, and that his situation depression, best corrected visual acuity of 20/80 in the left eye, recurrent dermatitis, and degenerative lumbar disc disease met the definition of "severe" under the Social Security Act. TR 492. At the third step of the analysis, however, the ALJ found that Plaintiff's impairments did not, singly or in combination, meet or equal a listed impairment as set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. TR. 492. At the fourth step, the ALJ determined that Plaintiff's impairments allowed him to perform the requirements of work except for lifting more than ten (10) pounds frequently or twenty (20) pounds occasionally, work that involves

---

[2] Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. 20 C.F.R. §§ 404.1520, 416.920 (2007). First, the claimant must not be engaged in substantial gainful activity for a period of not less than twelve months. 20 C.F.R. § 404.1520(c). Second, the claimant must suffer from a severe impairment. *Id.* Third, the ALJ must determine whether the impairment meets or equals the severity criteria set forth in the Listings of Impairments contained in the Social Security Regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2007). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must then undertake the fourth step and determine whether the claimant has the residual functional capacity to return to any past relevant work. 20 C.F.R. § 404.1520(e). If the ALJ finds that the claimant cannot perform past relevant work, then the fifth step requires the ALJ to determine whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(f).

prolonged exposure to sunlight, or work which would be precluded by slightly impaired depth perception or moderately limited ability to understand, remember, and carry out detailed instructions. TR. 492. The ALJ thus found that Plaintiff did not retain the residual functional capacity to return to his past relevant work as a plumber's apprentice or employment agency manager. TR. 492.

The ALJ then proceeded to the fifth step of the analysis and concluded that given Plaintiff's age, educational level, and residual functional capacity, Plaintiff could perform other work that existed in significant numbers in the national economy. TR. 492–93. Accordingly, the ALJ found that Plaintiff was not disabled at any time on or before March 31, 2002, or thereafter and through the date of the decision. TR. 493.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. The standard of review for an appeal of this nature is limited in scope to whether the decision below is supported by substantial evidence and whether the Commissioner used the proper legal standards in making that decision.[3] Substantial evidence means more than a scintilla of evidence but is less than a preponderance of the evidence.[4] It is such relevant evidence that a reasonable person might accept as adequate to support a conclusion.[5] Under the substantial evidence standard, the reviewing court must examine the evidence in the record as a whole and take into account that

---

[3] 42 U.S.C. § 405(g) (2005); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

[4] *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).

[5] *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

5

which detracts from the decision that is under review.[6] It may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.[7] If the court finds substantial evidence in the record to support the Commissioner's decision, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way."[8]

## ANALYSIS

### I. The ALJ's Analysis at Steps Four and Five

When an ALJ finds that a plaintiff's symptoms do not meet or equal a listed impairment, and the plaintiff cannot return to his past relevant work, the burden shifts to the government to show other work which exists in significant numbers in the national economy that the plaintiff can perform.[9] The ALJ can rely upon the testimony of a vocational expert in support of his step five findings regarding the availability of other work that the claimant can perform only if that testimony is "in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant."[10] Here, the ALJ found that Plaintiff was unable to perform past relevant work. T.R. 492. The burden, therefore, was on Defendant to establish that Plaintiff could perform other work.

---

[6] *Abbott,* 905 F.2d 923 (citing *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

[7] *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

[8] *Barker*, 40 F.3d at 794 (quoting *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)).

[9] *Lancaster v. Comm'r of Social Sec.*, 228 Fed. Appx. 563, 571 (6th Cir. 2007) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)).

[10] *Felisky v. Bowen*, 35 F.3d 1027, 1035–36 (6th Cir. 1994) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

### a. Dr. C. Greg Cates

Plaintiff argues that the ALJ's step four and step five findings are fatally flawed because the ALJ relied upon the <u>presumed</u> testimony of Dr. C. Greg Cates, a vocational expert who testified at the March 11, 2002, hearing. Plaintiff notes that the tape of the March 11, 2002, hearing was lost before it could be transcribed, and the ALJ at the August 1, 2006, hearing was not the same ALJ that presided over that March 11, 2002, hearing. The testimony of Dr. Cates, therefore, as well as the hypothetical question to which he was responding, was not in the record in this case, and the ALJ would have been unable to have reviewed it in any form. The Government concedes that the ALJ relied on this testimony, but asserts that he did not rely exclusively on such testimony in reaching his step five conclusion. It is unexplained how the ALJ reached his decision based upon this evidence that was not before him, and without more, the Court sees no way to uphold his decision. Because the ALJ relied on evidence that is not in the record, his step five finding, to the extent it is based on the testimony of Dr. Cates, is not supported by substantial evidence and must be reversed.

### b. Nancy Hughes

Plaintiff also argues that the step five findings of fact, to the extent they are based upon the testimony of vocational expert Nancy Hughes, are not supported by substantial evidence. Plaintiff argues that the ALJ did not submit hypothetical questions to the vocational expert in the August 1, 2006, hearing that accurately reflected Plaintiff's abilities and limitations and that the ALJ failed to take into account Plaintiff's depth of field vision problems. Additionally, Plaintiff contends that the ALJ misstated Ms. Hughes's testimony in his decision. The Government admits that the ALJ failed to take into account Plaintiff's impaired depth perception. The

Government argues, however, that the ALJ's questioning of Ms. Hughes was sufficient because he asked the vocational expert about exhibits that contained the exact physical and mental limitations identified in the ALJ's summary.

As discussed above, "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'"[11] "While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments."[12] It is inappropriate for the Court to assume whether the vocational expert would have given similar answers had the ALJ instructed her appropriately as to Plaintiff's impairments.[13]

In fact, the ALJ did not ask Ms. Hughes a hypothetical question at all, rather he instructed her to refer to exhibits that contained the mental and physical limitations identified in the ALJ's summary.[14] The ALJ instructed Ms. Hughes to "assume an individual with Mr.

---

[11] *Varley v. Sec'y of Health & Human Serv.*, 820 F.2d 777, 770 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). *See also Grecol v. Halter*, 46 Fed. Appx. 773, 776–78 (6th Cir. 2002).

[12] *Lancaster*, 228 Fed. Appx. at 573 (quoting *Podedworny*, 745 F.2d at 218).

[13] *Lancaster,* 228 Fed. Appx. at 573 (quoting *Pendly v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985)).

[14] The exhibits in question, Exhibits 22F and 24F, are contained in the record at pages 416–19 and 429–36. Exhibit 22F states that Plaintiff's ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to interact appropriately with the general public, and ability to respond appropriately to changes in the work setting are moderately limited. Exhibit 24F states that Plaintiff can lift ten pounds frequently and twenty pounds occasionally, can stand, walk, or sit for about six hours in an eight hour workday, and is unlimited in his ability to push and/or pull. The exhibit also states that Plaintiff can climb, balance, stoop, kneel, crouch, and crawl

DiMarco's age, education, and work experience" and "[f]urther assume the mental and residual functional capacities of our medical source at 22F and 24F" and then asked Ms. Hughes whether "such an individual [is] able to perform past occupations" TR 573. Ms. Hughes responded in the negative. The ALJ then asked Ms. Hughes if such an individual could perform other occupations to which Ms. Hughes responded affirmatively. TR 573. In his decision, the ALJ stated:

> At the second supplemental hearing the vocational expert Nancy Hughes testified that if the claimant were limited to lifting a maximum of 10 pounds frequently and 20 pounds occasionally and standing and/or walking for six hours per day with moderate limitation of his ability to understand, remember, and carry out detailed instructions; maintain concentration and attention for extended periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and complete a normal workday and week without interruptions from psychologically based symptoms he would be unable to perform any of his past work, but would still be capable of performing the jobs of cashier, assembly press operator, and certain assembler jobs.

TR 491. Importantly, the ALJ did find that Plaintiff had impaired depth perception. TR. 492. This is significant because, even assuming that instructing the vocational expert to assume a person with the limitations described in exhibits 22F and 24F qualifies as a hypothetical question, the ALJ's failure to include Plaintiff's impaired depth perception as a limitation caused the question to not accurately portray Plaintiff's physical and mental state. Because the ALJ did not ask a hypothetical question that correctly reflected Plaintiff's physical and mental impairments, including Plaintiff's impaired depth perception, the testimony of Nancy Hughes does not amount to substantial evidence on which the ALJ could support his finding that Plaintiff

---

frequently. Further, exhibit 24 shows that Plaintiff has no manipulative, visual, communicative, or environmental limitations.

could perform other work.[15] Therefore, the ALJ must be reversed on this ground as well.

## II. Residual Functional Capacity Determination

Plaintiff next argues that the ALJ improperly weighed the opinions of his treating physicians. The opinions of treating physicians are generally entitled to greater weight than those of non-treating physicians.[16] In fact, the ALJ must at least give a treating physician's opinion substantial deference, and if the opinion is not contradicted, the ALJ must give it controlling weight.[17] Treating physician opinions, however, receive controlling weight only when they are well-supported by medically acceptable clinical techniques and are consistent with other substantial evidence.[18]

"When [an ALJ] do[es] not give the treating source's opinion controlling weight, [the ALJ] appl[ies] [various] factors . . . in determining the weight to give the opinion."[19] This six-factor analysis includes 1) the examining relationship; 2) the length, frequency, nature and extent of the treatment relationship; 3) evidence in support of the opinion; 4) consistency of the opinion with evidence in the record; 5) the physician's specialization; and 6) any other factors brought to

---

[15] *See id.*

[16] *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985); 20 C.F.R. § 404.1527(d). Less weight, therefore, is given to the opinions of physicians who see claimants infrequently. *See* 20 C.F.R. § § 404.1527(d)(2); 416.927(d) (2007).

[17] *Lancaster*, 228 Fed. Appx. at 576.

[18] 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

[19] *Lancaster v. Comm'r of Social Sec.*, 228 Fed. Appx. 563, 576 (6th Cir. 2007); 20 C.F.R. § 404.1527(d).

the ALJ's attention.[20]  Furthermore, the ALJ "will always give good reasons in [the] notice of determination or decision for the weight . . . give[n][to the] treating source's opinion."[21]  The ALJ, however, "is not bound by treating physicians' opinions, especially when there is substantial medical evidence to the contrary."[22]  "[T]he ultimate decision of disability rests with the [ALJ]."[23]

### a.  Dr. David Bryan

Plaintiff contends that the ALJ did not give appropriate weight to the opinion of his treating physician, Dr. David Bryan in that the ALJ failed to follow the steps set out in 20 C.F.R. § 404.1527 for evaluating medical opinion evidence.  Defendant, on the other hand, argues that the ALJ discredited Dr. Bryan's opinion because it was not supported by clinical findings and was inconsistent with the record as a whole.  Dr. Bryan's residual medical source statement limited Plaintiff to lifting less than ten pounds, standing four to six hours, sitting four to six out of eight hours, and noted that Plaintiff was limited in his ability to handle, feel, push, and pull.  TR 140–42.  The ALJ, however, found that Plaintiff's physical residual functional capacity was "reduced to the extent that he is limited to performing work which involves no prolonged exposure to sunlight, lifting a maximum of [ten] pounds frequently and [twenty] pounds

---

[20] *Id.*; *see also Wilson*, 378 F.3d at 544; *Campbell v. Barnhart*, 374 F. Supp. 2d 498, 503 (E.D. Tex. 2005).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544.

[21] *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)).

[22] *Lancaster*,  228 Fed. Appx. at 576 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir.1994)).

[23] *Id.* (quoting *Walker v. Sec'y of HHS*, 980 F.2d 1066, 1070 (6th Cir. 1992)).

occasionally, and standing and/or walking for six hours per day and which would not be precluded by slightly impaired depth perception." TR. 487. Thus, the ALJ gave Dr. Bryan's opinion minimal evidentiary weight. TR. 486.

In examining the ALJ's decision to discredit Dr. Bryan's opinion, the Court must look to the six-factor analysis set out in 20 C.F.R. § 404.1527(d). The ALJ, however, did not perform the full six-factor analysis required by 20 C.F.R. § 404.1527. For example, regarding the first and second factors, the ALJ did not discuss Dr. Bryan's examining relationship and the length, frequency, nature and extent of the treatment relationship.

Apparently using only factors three and four (supportability and consistency), the ALJ found that Dr. Bryan's opinion was not supported by objective, clinical findings, was unsupported by his own records, and was inconsistent with the record as a whole. TR. 486–87. The ALJ stated that because the record contains no objective clinical or laboratory evidence of any medical condition which could cause the degree of limitation indicated by Dr. Bryan, it was "evident that Dr. Bryan's assessments [were] based on [Plaintiff's] statements about his condition instead of on objective medical evidence." TR. 486. Additionally, the ALJ stated that "Dr. Bryan did not cite a single objective clinical finding in support of his opinion . . ." and that "Dr. Bryan's opinions as to [Plaintiff's] functional capacity are unsupported by medical evidence and inconsistent with the record as a whole . . . ." TR. 486.

These statements, however, appear only to address the supportability and credibility of Dr. Bryan's opinion and not the other factors the ALJ was required to analyze. For instance, the ALJ did not discuss factor five, the physician's specialty. As to any other factors brought to the ALJ's attention, the ALJ further discredited Dr. Bryan's opinion stating that there was no

12

indication that Dr. Bryan was aware that Plaintiff was "unreliable about the nature and degree of his medical problems," and that also "lessen[ed] the weight of Dr. Bryan's report." TR. 486. The ALJ did not specifically mention these factors in his decision, but had the ALJ analyzed all of the factors as required by the regulations, he likely would have found that some of them, such as the length and nature of the treatment relationship, weighed in favor of according great weight to Dr. Bryan's opinion. Because the ALJ failed to perform this analysis, his decision to discount Dr. Bryan's opinion is not supported by substantial evidence in the record and must be reversed.

### b. Dr. David Favara

Plaintiff likewise contends that the ALJ did not give appropriate weight to Dr. David Favara, Plaintiff's treating psychotherapist. Plaintiff argues that, because Dr. Favara was a treating source, the ALJ should have afforded his assessment great weight, if not controlling weight, rather than no weight at all. The Defendant argues that the ALJ acted properly in discrediting Dr. Favara's opinion because 1) he did not cite clinical findings of depression or any other mental pathology in support of his opinion, 2) he did not perform any testing to determine the validity of Plaintiff's complaints, and 3) his opinion was inconsistent with the record as a whole, including Plaintiff's daily activities.

In his 1998 assessment, Dr. Favara found that Plaintiff's ability to deal with work stresses, maintain attention/concentration, follow simple, complex, and detailed job instructions, and maintain personal appearance were all seriously limited, and that Plaintiff's ability to behave in an emotionally stable manner was limited to seriously limited. TR. 390–92. Also, Dr. Favara noted in a letter dated August 6, 1997, that Plaintiff had major depressive disorder, obsessive-compulsive disorder, and posttraumatic stress disorder ("PTSD"). TR. 388. At the first hearing

13

before ALJ Fava on January 5, 1999, Dr. Favara[24] testified that Plaintiff had depression that gets better with treatment, and then gets worse again. TR. 466–471. Finally, in a 2002 assessment, Dr. Favara found that Plaintiff's ability to deal with the public, use judgment with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, and maintain personal appearance were seriously limited, and that Plaintiff's ability to function independently and to understand, remember, and carry out complex job instructions were limited to seriously limited. TR. 111–12.

The ALJ discredited Dr. Favara's opinion as inconsistent with the record as a whole, and thus gave it minimal evidentiary weight. TR. 490. In his RFC finding, the ALJ noted that Plaintiff alleged depression as a disabling impairment, but ultimately found only that plaintiff's "mental capacity for work [was] reduced by inattentiveness and distractibility which causes moderate limitation of his ability to understand, remember, and carry out detailed instructions." TR. 490.

In evaluating the ALJ's decision to discredit Dr. Favara's opinion, the Court again must apply the six-factor analysis of 20 C.F.R. § 404.1527(d). As to the first and second factors, the examining relationship and the length, frequency, nature and extent of the treatment relationship, the ALJ did recognize the fact that Dr. Favara's treatment of Plaintiff dated back to 1996. TR. 487. The ALJ also noted the treatment and assessments of Plaintiff by Dr. Favara over the years since. TR. 487–89. Although the ALJ addressed the treatment relationship between Plaintiff and Dr. Favara, he did not state the significance that he placed or did not place upon the length and frequency of it.

---

[24] The transcript refers to the witness as Dr. Provero, from what the Court can discern, however, it is in fact, Dr. Favara.

The length, frequency, nature and extent of the examining and treatment relationship are important because treating sources may be "able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examiners."[25] As discussed above, when the ALJ does not give a treating source controlling weight, he mut give good reasons for the weight given the treating source's opinion.[26] Because the ALJ did not state the significance he placed on the length, nature, and extent of the relationship, he failed to give good reasons for the weight given the treating source's opinion.

As to the third and fourth factors, evidence in support of the opinion and consistency of the opinion with evidence in the record, the ALJ discredited Dr. Favara's opinion stating that "the record documents no ongoing clinical signs of depression or PTSD." TR. 487. He also noted that Dr. Favara's diagnosis of PTSD was inconsistent with the VA treating psychiatrist, Dr. Ajit Pillai who noted Plaintiff "to be without typical PTSD symptoms." TR. 487. Furthermore, the ALJ pointed out that the record documented no mental health treatment since 2004, and that "the absence of treatment for the past two years shows that if [Plaintiff] had any mental symptoms during this period they were insignificant." TR. 488. Finally, the ALJ found that because there was no objective medical evidence of a mental impairment that persisted at a disabling level of severity for twelve continuous months as required by C.F.R. §§ 404.1505 and 404.1508, Plaintiff had no disabling mental impairment. TR. 488. Because the ALJ found Dr. Favara's opinion inconsistent with the record as a whole, he gave it little weight. TR. 490.

---

[25] 20 C.F.R. § 404.1527(d)(2).

[26] *Id.*

15

As to the fifth factor, the physician's specialization, the ALJ noted that "Dr. Favara has a doctorate in education and is not a medical doctor[, and] [t]herefore, he is not qualified to assess the extent to which [Plaintiff's] physical problems limit his ability to work, and his conclusion that [Plaintiff's] physical and emotional problems prevent him from working is given no evidentiary weight." TR. 488. Finally, as to any other factors brought to the ALJ's attention, the ALJ noted a social connection between Plaintiff's family and Dr. Favara's family which the ALJ found to further reduce the weight of Dr. Favara's opinion. TR. 490.

Applying the six-factor analysis to his findings, the Court finds that the ALJ's decision to afford Dr. Favara's opinion little weight is not supported by substantial evidence. Although the other factors may arguably support the ALJ's decision to discount Dr. Favara's opinion, the ALJ failed to state the significance of the examining and treatment relationship as required by the regulation. Thus, he did not "give good reasons" for not giving weight to the treating source as required by 20 C.F.R. § 404.1527(d)(2). "A decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"[27] The Court thus recommends that the ALJ be reversed on this ground as well.

### c. Dr. Robert Kennon

Plaintiff next contends that the ALJ erred in not including in his RFC the mental limitations identified by Dr. Robert Kennon, an examining psychologist. Specifically, Plaintiff alleges that the ALJ improperly disregarded Dr. Kennon's opinion that Plaintiff's ability to make

---

[27] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

judgments on simple work-related decisions was moderately to markedly impaired, his ability to respond appropriately to work pressures in a usual work setting was markedly impaired, and his ability to carry out detailed instructions was markedly impaired. Dr. Kennon found in his 1997 examination, that Plaintiff had no deficits in his ability to sustain concentration and persistence, that there was no evidence of Plaintiff having difficulty maintaining a schedule or relating to others, and that Plaintiff could work in proximity to others without being distracted by them. TR. 331. Dr. Kennon also found that Plaintiff had no significant memory disturbance. TR. 331. Dr. Kennon's prognosis and summary noted, however, that Plaintiff was significantly depressed and that "he does show some limitations in his ability to adequately adapt as he may not respond appropriately to changes in the work setting." TR. 331. In 2001, Dr. Kennon found that Plaintiff's ability to make judgments on simple work-related decisions was moderately to markedly impaired, his ability to respond appropriately to work pressures in a usual work setting was markedly impaired, and his ability to carry out detailed instructions was also markedly impaired. TR. 109–10, 745–46.

Plaintiff argues that the ALJ improperly rejected Dr. Kennon's opinion in finding Plaintiff essentially without mental limitation. Defendant counters that because Dr. Kennon saw Plaintiff only twice, the ALJ was correct in giving his opinion less weight. Defendant also asserts that Dr. Kennon's opinion in 2001 is inconsistent with and more restrictive than the one in 1997, and therefore, the ALJ was warranted in not including the mental limitations in his Residual Functional Capacity Finding because Dr. Kennon's opinion is not supported by the record as a whole. A review of the record in this case reveals, however, that Dr. Kennon's 1997 and 2001 opinions are not inconsistent with one another. For example, both the 1997 and 2001

17

opinion state that Plaintiff has moderate to severe depressive disorder. TR. 331 and 752. Furthermore, the ALJ's decision, does not discredit Dr. Kennon's opinion, but rather relies on Dr. Kennon's opinion in support of his finding that Plaintiff has no disabling mental impairment. TR. 488.

Defendant is correct that generally less weight is given to the opinions of physicians who see claimants infrequently.[28] Social Security Ruling 96-6p states, however, that a consulting physician's opinion is to be considered and weighed as that of a highly qualified expert.[29] The ALJ cannot simply disregard the portions of a consulting physician's opinion which are favorable to a claimant, but must explain the weight he gives to the consultant's opinion in his decision.[30] Here, the ALJ virtually ignored Plaintiff's mental limitations listed in both Dr. Favara and Dr. Kennon's opinion to reach his own conclusion that Plaintiff's mental capacity is reduced only by inattentiveness and distractibility which causes moderate limitation of his ability to understand, remember, and carry out detailed instructions. This conclusion is not supported by substantial evidence and should be reversed.

### d. Other Physicians

Finally, Plaintiff argues that the ALJ improperly disregarded the opinions of Dr. Aaron Milstone and Dr. Joseph Johnson. Dr. Milstone noted that Plaintiff suffered from a failed laminectomy and vision impairment. TR. 319. Dr. Johnson opined that Plaintiff needed frequent breaks during the day to change position. TR. 97. Defendant again argues that because

---

[28] *See* 20 C.F.R. § § 404.1527(d) and 416.927(d).

[29] 1996 WL 374180 at *1, *2 (July 2, 1996).

[30] *Id.*

each of these doctors saw Plaintiff only once, less weight should be afforded to their opinions in accordance with 20 C.F.R. § § 404.1527(d) and 416.927(d). Interestingly though, the ALJ did give credit to Dr. Milstone's and Dr. Johnson's opinions in order to discredit Plaintiff's claims of back and knee pain. TR. 480–81. Additionally, Defendant states that Dr. Milstone did not indicate that Plaintiff would have any work-related limitations as a result of his finding and that Dr. Johnson's opinion was inconsistent with the record as a whole because none of the physicians at the Memphis Veterans Affairs Medical Center submitted opinions that Plaintiff had any functional limitations. Thus, according to Defendant, Dr. Johnson's opinion was inconsistent with the record as a whole, and the ALJ was warranted in giving it less weight.

The ALJ's evaluation of the substantiality of the evidence must be based upon the record as a whole, and "does not permit a selective reading of the record."[31] The ALJ does not have to address each item of evidence individually, but he must sufficiently state his reasons for reaching his decision in order for a court to be able review his decision.[32] The ALJ's failure to discuss Dr. Milstones's and Dr. Johnson's findings does not mean that he did not consider them, however. "An ALJ need not discuss every piece of evidence in the record . . . ."[33] Therefore, the Court does not recommend that the ALJ be reversed on this ground.

## CONCLUSION

As discussed above, the Court finds that substantial evidence does not exist to support the ALJ's determination that Plaintiff is not disabled. The ALJ relied on vocational expert

---

[31] *McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 869 (E.D. Mich. 2005).

[32] *Id.* (citing *Cherukuri v. Shalala*, 175 F.3d 446, 455–56 (6th Cir. 1999).

[33] *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004).

testimony that was not in the record before him, and he did not profer a hypothetical question to the vocation expert that contained all of Plaintiff's limitations.  Finally, the ALJ failed to perform the six-factor analysis for Plaintiff's treating sources' opinions as prescribed by 20 C.F.R. § 404.1527.  Therefore, the Court recommends that the ALJ's decision be **REVERSED**.

                                            **s/ S. Thomas Anderson**
                                            S. THOMAS ANDERSON
                                            UNITED STATES MAGISTRATE JUDGE

Date:   January 30th, 2008.

**NOTICE**

ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS FROM THE DATE OF SERVICE OF THE REPORT. FAILURE TO FILE THEM WITHIN TEN (10) DAYS OF SERVICE MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.